FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SILVIA E.,[1] | No.    1:22-cv-3008-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE DECISION OF THE ALJ AND REMANDING FOR AWARD OF BENEFITS** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Silvia E. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ failed to provide adequate reasons supported by substantial evidence for discounting evidence regarding Plaintiff's fibromyalgia (FM), the Court reverses the decision of the ALJ. On this record, an award of benefits is justified.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER - 1

## I.    Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2]  Step one assesses whether the claimant is engaged in substantial gainful activity.[3]  Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4]  Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5]  Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6]  Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

## II.    Background

In June 2016, Plaintiff filed an application for benefits under Title 2.  She claimed disability based on fibromyalgia, back problems, pain in her right shoulder/arm, chest pain/cardiovascular complications, anxiety, depression, and thyroid issues.[8]  Plaintiff alleged an onset date of October 31, 2014.  After the agency denied her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.

### A.    2018 ALJ Hearing & Decision

In June 2018, ALJ Marie Palachuck held a hearing at which Plaintiff testified.[9]  The ALJ also took testimony from two medical experts and a vocational expert.  In August 2018, ALJ Palachuck issued a written decision denying disability.[10]  Plaintiff appealed the denial, and the parties then agreed that her case should be remanded for a redetermination.[11]  While her appeal was pending, Plaintiff filed a subsequent application, claiming disability under both Title 2 and Title 16, and adding Stage 2 breast cancer as a basis for disability.[12]  Plaintiff's claims were consolidated on remand.

---

[8] *See* AR 283, 318.

[9] AR 48–88.

[10] AR 31–42.

[11] AR 2297–98.

[12] *See* AR 2502.

**B.    2021 ALJ Hearing & Decision**

In August 2021, on remand, ALJ C. Howard Prinsloo held another administrative hearing, this time by telephone.[13]  Plaintiff and a new vocational expert each presented additional testimony.  In September 2021, the ALJ issued a written decision again denying Plaintiff's claims.[14]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through March 31, 2019.

- Step one: Plaintiff had not engaged in substantial gainful activity since October 31, 2014, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: fibromyalgia, breast cancer, right-shoulder disorder, spinal disorder, tachycardia, affective disorder, and anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work, subject to the following additional limitations:

    The claimant can occasionally climb ladders, ropes, or scaffolds.
    The claimant can occasionally reach overhead and frequently
    reach in front or laterally with the bilateral upper extremities.
    The claimant should avoid concentrated exposure to extreme
    cold, vibrations, and hazards. The claimant can perform simple,

---

[13] AR 2231–48.

[14] AR 2181–94.

routine tasks. The claimant should perform work away from the general public.[15]

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, she could perform work that existed in significant numbers in the national economy, such as advertising material distributor; cleaner housekeeper; and small products I assembler.

In reaching his decision, as relevant here, the ALJ gave "significant" weight to the medical opinions of:

- James McKenna, MD, who testified as a medical expert at the June 2018 hearing regarding Plaintiff's physical impairments, opining that she could perform light work, with occasional overhead reaching and frequent gross manipulation.[16] Notably, he also opined that "long ladders, ropes, and scaffolds would absolutely have to be precluded," and that due to Plaintiff's fibromyalgia, she should "avoid even moderate exposure to extreme cold or vibration."[17]

- Norman Staley, MD, who assessed Plaintiff's physical RFC as a state-agency consultant in July 2020, opining that Plaintiff could perform light

---

[15] AR 2185.

[16] *See* AR 48–88.

[17] AR 59, 60.

ORDER - 5

1    work with certain additional postural, manipulative, and environmental

2    limitations.[18]

3  The ALJ gave "partial" weight to the medical opinion of:

4    • Howard Platter, MD, who assessed Plaintiff's physical RFC as a state-

5    agency consultant in December 2016.[19]

6  The ALJ gave "little" weight to the medical opinion of:

7    • Luis Vincenty, MD, who was Plaintiff's primary care physician and

8    opined in February 2017 that if she were to attempt fulltime work, her

9    fibromyalgia symptoms and the medication side effects would require her

10    to take extra breaks, result in excessive absences, and render her "unable

11    to perform activities."[20]

12    The ALJ therefore found Plaintiff not disabled.  Plaintiff requested review of

13  the ALJ's decision by the Appeals Council, which denied review.[21]  Plaintiff then

14  timely appealed to the Court.

15  ///

16  //

17  /

18

19  _____

20  [18] *See* AR 2312–14.

21  [19] AR 113–15.

22  [20] AR 815–16.

23  [21] AR 1–3.

ORDER - 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[22]
The Commissioner's decision is set aside "only if it is not supported by substantial
evidence or is based on legal error."[23]   Substantial evidence is "more than a mere
scintilla but less than a preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."[24]   Because it is the role of
the ALJ to weigh conflicting evidence, the Court upholds the ALJ's findings "if they
are supported by inferences reasonably drawn from the record."[25]   Further, the
Court may not reverse an ALJ decision due to a harmless error—one that "is
inconsequential to the ultimate nondisability determination."[26]

//

/

---

[22] 42 U.S.C. § 405(g).

[23] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[24] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[25] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See also Lingenfelter v.
Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire
record as a whole, weighing both the evidence that supports and the evidence that
detracts from the Commissioner's conclusion," not simply the evidence cited by the
ALJ or the parties.) (cleaned up).

[26] *Molina*, 674 F.3d at 1115 (cleaned up).

# IV.    Analysis

Plaintiff argues the ALJ erred in his assessment of the medical-opinion evidence and Plaintiff's testimony.[27]  The Court agrees; the ALJ reversibly erred by improperly discounting evidence relating to Plaintiff's fibromyalgia and breast cancer.

## A.    Medical Opinions: Plaintiff establishes consequential error.

The Court begins with Plaintiff's challenge to the ALJ's treatment of Dr. Vincenty's medical opinion as a treating physician.

### 1.    Applicable Standard

Based on the filing date of Plaintiff's initial disability application, medical opinions are to be assessed based on the nature of the medical relationship the claimant had with the medical provider.[28]  The medical opinion of a claimant's treating physician is to be given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[29] "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of

---

[27] *See generally* ECF No. 15.

[28] *See* 20 C.F.R. §§ 404.1527, 416.927.

[29] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

examination, the nature and extent of the treatment relationship, supportability, and consistency with the record."[30]

If a treating physician's opinion is not contradicted by another medical expert, the opinion may be rejected only for "clear and convincing" reasons.[31] When it is contradicted, the opinion may be rejected for "specific and legitimate reasons" supported by substantial evidence.[32] Even then, however, "the opinions of nonexamining doctors cannot by themselves constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."[33]

### 2. Dr. Vincenty's Medical Opinion

In February 2017, treating physician Dr. Vincenty filled out a medical-report form. In it, Dr. Vincenty opined that Plaintiff's fibromyalgia required her to lie down for an hour per day, that regular work would cause her pain to worsen, and that she would likely miss "all" days of work due to pain if tasked with full-time

---

[30] *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citing §§ 404.1527(c)(2)–(6)).

[31] 20 C.F.R. §§ 404.1527, 416.927; *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).

[32] *Id.*

[33] *Revels*, 874 F.3d at 664.

work.[34]  Dr. Vincenty also stated that the side effects of Plaintiff's prescribed medication (duloxetine) would render her "unable to perform activities."[35]

The ALJ's only explanation for discounting Dr. Vincenty's medical opinion was as follows:

> Dr. Vincenty saw the claimant only a few times over a span of a couple months over a span of two months [sic] from January through February 2014.  I give greater weight to the longitudinal evidence, which shows that the claimant regularly presents to appointments in no acute distress and that, on examinations, she often has normal reflexes, sensation, coordination, muscle strength, muscle tone, and gait, with no signs of tenderness to palpation. These examination findings do not corroborate Dr. Vincenty's conclusion that the claimant's fibromyalgia is disabling.[36]

The ALJ's reasoning is flawed for a few reasons.

### a.  *Dr. Vincenty had a well-established treating relationship.*

The number of times a claimant meets with a provider is an important factor in assigning weight to medical opinions.[37]  Here, the ALJ apparently misread Dr. Vincenty's handwriting as indicating he last treated Plaintiff in February 201<u>4</u> whereas a close inspection reveals that Dr. Vincenty wrote he had been treating

---

[34] AR 815–16.

[35] AR 815.  Plaintiff consistently reported that duloxetine made her drowsy, sleepy, and nauseated. AR 337.

[36] AR 2189 (internal citation omitted).

[37] 20 C.F.R. § 416.927(c).

Plaintiff through February 13, 201<u>7</u>—the date of his report.[38]  This date also matches the treatment notes, which reflect an appointment that same day.[39] Further, the medical records clearly show that by February 2017, the treating relationship was already well-established; Plaintiff visited Dr. Vincenty as a primary care physician over a dozen times in the year 2016 alone.[40]

Even if it was reasonable for the ALJ to mistake Dr. Vinenty's "2017" for "2014," the ALJ was required to consider all the medical evidence.[41]  Thus, the ALJ should have been aware that Dr. Vincenty's treating relationship with Plaintiff far

---

[38] Admittedly, Dr. Vincenty's handwriting is such that the "7" in the date of last treatment—written "2/13/2017"—closely resembles a "4." *See* AR 815.

[39] AR 2045–50 (02/13/2017). *Cf. also* AR 2051–55 (02/07/2017).

[40] *See, e.g.*, AR 454 (03/07/2016); AR 439 (04/28/2016); AR 434 (05/17/2016); AR 424 (06/16/2016); AR 418 (06/21/2016); AR 413 (07/07/2016); AR 790 (07/12/2016); AR 779 (08/24/2016); AR 774 (09/28/2016); AR 800 (10/11/2016); AR 805 (11/07/2016); AR 2015 (12/07/2016); AR 2005 (12/29/2016); AR 2051 (02/07/2017); AR 2045 (02/13/2017). These visits are in addition to the several visits in which Plaintiff visited the same clinic but was seen by another provider. *See e.g.*, AR 430 (06/07/2016); AR 445 (03/17/2016); AR 449 (03/10/2016); AR 459 (01/27/2016).

[41] 20 C.F.R. §§ 404.1520(a)(3); 416.920(a)(3).

exceeded seeing her "a few times over a span of a couple months."[42]  Substantial

evidence does not support rejecting Dr. Vincenty's medical opinion based on an

insufficient treating relationship with Plaintiff.

       b.     *The ALJ improperly relied on irrelevant "normal" examination*
                *findings to reject fibromyalgia-related limitations.*

Throughout his decision, the ALJ cited to several examples of

"unremarkable" physical examinations of Plaintiff.[43]  While the consistency of a

medical opinion with the longitudinal record is a factor for the ALJ to consider, the

normal findings cited by the ALJ do not provide a valid basis for discounting

Dr. Vincenty's opinion regarding Plaintiff's fibromyalgia.  As the court in *Revels v.*

*Berryhill* stated,

> Fibromyalgia is a rheumatic disease that causes inflammation of the
> fibrous connective tissue components of muscles, tendons, ligaments,
> and other tissue.  Typical symptoms include chronic pain throughout
> the body, multiple tender points, fatigue, stiffness, and a pattern of
> sleep disturbance that can exacerbate the cycle of pain and fatigue.
> What is unusual about the disease is that those suffering from it have
> muscle strength, sensory functions, and reflexes that are normal.
> Their joints appear normal, and further musculoskeletal examination
> indicates no objective joint swelling.  Indeed, there is an absence of
> symptoms that a lay person may ordinarily associate with joint and
> muscle pain.[44]

---

[42] *See* AR 2189.

[43] AR 2186.

[44] *Revels*, 874 F.3d at 656 (cleaned up).

As such, "the examination results cited by the ALJ are perfectly consistent with debilitating fibromyalgia."[45]

The "normal findings" in the physical examinations cited by the ALJ do not truly contradict the conclusions of Dr. Vincenty regarding the effect of Plaintiff's fibromyalgia.[46] After all, the ALJ found Plaintiff's fibromyalgia was a severe medically determinable impairment. The Social Security Administration recognizes that the symptoms of fibromyalgia tend to "wax and wane," and that a person may have "bad days and good days."[47] And Dr. McKenna—whose testimony the ALJ assigned "significant weight"—acknowledged that Plaintiff's treating physician would likely be better able to account for limitations arising from fibromyalgia flareups, saying, "I'm not entirely sure that I definitely have a good

---

[45] *See id.* at 666.

[46] This includes the ALJ's references to Plaintiff presenting "in no acute distress." Fibromyalgia is a condition marked by "*chronic* pain throughout the body," *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir.2004) (emphasis added), and not necessarily "acute distress." "Without more, that term does not constitute an objective medical finding that is inconsistent with severe fibromyalgia." *Reinertson v. Barnhart*, 127 F. App'x 285, 290 n.2 (9th Cir. 2005) (unreported).

[47] SSR 12-2p, 2012 WL 3104869, at *6.

feel for that, specifically."[48]  Thus, the ALJ's perceived differences between the physical examinations and Dr. Vincenty's conclusions do not constitute a legitimate reason for discounting the treating physician's medical opinion.[49]

                     c.     *The ALJ's error was consequential.*

The ALJ did not provide specific and legitimate reasons to reject Dr. Vincenty's opinion, and he failed to follow the appropriate methodology for assigning weight to a treating physician's medical opinion.  Accordingly, the ALJ erred in giving Dr. Vincenty's opinion little weight.  "The ALJ should have instead found it to be controlling as to the intensity, persistence, and limiting effects of [Plaintiff's] fibromyalgia."[50]

Moreover, even if the ALJ had pointed to substantial evidence supporting the decision not to give Dr. Vincenty's opinion controlling weight, he still failed to explain why the opinion deserved little weight.  "When a treating provider's opinion is not entitled to controlling weight because of substantial contradictory evidence, that opinion is still entitled to deference based on factors such as the

---

[48] AR 61–62. *But cf.* AR 61 (Dr. McKenna also stating, "A lot of the primary care RFCs tend to be very heavily symptom-weighted, rather than impairment-weighted.").

[49] *See Revels*, 874 F.3d at 662–65.

[50] *See id.* at 664–65.

length and nature of the treatment relationship."[51]  That Dr. Vincenty had the most extensive treatment relationship with Plaintiff was a strong reason to defer to his opinion.[52]

Had the ALJ fully incorporated Dr. Vincenty's medical opinion into the RFC, Plaintiff would have necessarily been found disabled.[53]  For instance, according to the vocational expert, just the need to lie down for an hour every day would by itself preclude competitive employment.[54]  The ALJ's error was therefore consequential and requires reversal.

**B.    Symptom Reports: Plaintiff establishes consequential error.**

The ALJ's assessment of Plaintiff's fibromyalgia-related symptom reports suffers from the same shortcomings discussed above.

1.    Applicable Standard

An ALJ is instructed to "consider all of the evidence in an individual's record" to determine how symptoms limit a claimant's ability to perform work-

---

[51] *Id.* at 664 (cleaned up).

[52] *See id.*

[53] *See Robbins. v. Soc. Sec. Admin*, 466 F.3d 880, 886 (9th Cir. 2006) (noting that the ALJ must include properly supported functional limitations in the RFC hypothetical posed to the vocational expert to ensure the identified occupations are consistent with claimant's functional limitations).

[54] AR 82–83 (opining that employers will tolerate a maximum of 10% off-task time).

related activities.[55]   Factors for the ALJ to consider in evaluating the intensity,

persistence, and limiting effects of a claimant's symptoms include: (1) daily

activities; (2) the location, duration, frequency, and intensity of pain or other

symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type,

dosage, effectiveness, and side effects of any medication the claimant takes or has

taken to alleviate pain or other symptoms; (5) treatment, other than medication,

the claimant receives or has received for relief of pain or other symptoms; (6) any

non-treatment measures the claimant uses or has used to relieve pain or other

symptoms; and (7) any other factors concerning the claimant's functional

limitations and restrictions due to pain or other symptoms.[56]

    Here, because there is no affirmative evidence of malingering, the ALJ was

required consider the relevant factors and provide specific, clear, and convincing

reasons supported by substantial evidence for rejecting Plaintiff's symptom

reports.[57]

    2.    The ALJ's Faulty Reliance on "Normal" Examinations

    The ALJ's gave only one reason for rejecting Plaintiff's fibromyalgia

symptom reports: "Although the claimant alleges being unable to work due to

---

[55] SSR 16-3p, 2016 WL 1119029, at *2.

[56] SSR 16-3p at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).

[57] *See* 20 C.F.R. § 416.929(c); SSR 16-3p at *7; *Ghanim v. Colvin*, 763 F.3d 1154,

1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

diffuse pain as a result of fibromyalgia, her allegations are not fully consistent with her unremarkable physical examinations."[58]  After citing several normal examination findings as to Plaintiff's extremities, the ALJ concluded those records "often reveal no tenderness to palpation of her extremities," and that such evidence "does not corroborate her allegations of chronic, widespread dysfunction in her extremities."[59]

First, the ALJ's reasoning again fails to account for the nature of fibromyalgia and that normal physical examinations do not necessarily undermine claims of severe symptoms.[60]  Second, the ALJ's focus on Plaintiff's extremities ignores that fibromyalgia affects the whole body and that Plaintiff most frequently complained about pain—and had tenderness to palpation—in her back, neck, and shoulders.[61]  Third, in saying the physical examinations "often reveal no

---

[58] AR 2186.

[59] AR 2186.

[60] *See Revels*, 874 F.3d at 656.

[61] *See, e.g.*, AR 363 (""All fibromyalgia tender points are mildly positive."); AR 369 ("There is generalized sensitivity anywhere I touch her along the spine, she is most tender in the midline thoracic spine, but she also has tender points scattered around her neck, upper back, lower back and hip region."; AR 374 ("Tenderness to palpation bilateral thoracic and lumbar paraspinals and bilateral sacroiliac joints."); AR 421 ("Neck pain on palpation" and "lumbar pain on palpation.");

1    tenderness to palpation of her extremities," the ALJ gives the misleading

2    impression that such tests were routinely administered as part of physical

3    examinations.[62]  The vast majority of the medical records indicate that if a physical

4    examination was conducted at all, it likely did not extend to palpating Plaintiff's

5    extremities to test for tenderness.[63]

6        The ALJ failed to provide a clear and convincing reason supported by

7    substantial evidence for discounting Plaintiff's symptom reports regarding her

8    fibromyalgia.  Had the ALJ fully credited such symptom reports, it is likely

---

AR 955 ("tender L rhomboid and upper trap"); AR 962 (tender R posterior neck to R

upper arm"); AR 2008 ("Neck, shoulder, and thorac[ic] pain on palpation"); AR 2072

("has a lot of muscle spasm on lumbar region and cervical region: very tender in

upon palpation"); AR 3111 (10/05/2016: "Right should is very tender to palpation

throughout the joint line mainly in the supraspinatus region as well as the supra-

and infraclavicular area."); AR 3180 (Plaintiff reporting neck pain);

AR 3867 ("She does have point tenderness.").

[62] *See Ghanim*, 763 F.3d at 1164 (requiring the ALJ to consider the purpose and

scope of the treatment examination and the provider's comments in the context of

the longitudinal treatment).

[63] *See, e.g.*, AR 777; AR 782; AR 2008; AR 2024–25; AR 2105–06; AR 4702 (each

cited by the ALJ, and each providing no indication that the physical exam included

palpating Plaintiff's extremities).

1  Plaintiff would have been found disabled.  As such, this too amounts to

2  consequential error.[64]

3  **C.    Additional Errors of Note**

4      Because they speak to whether additional proceedings would be of any

5  benefit, the Court briefly notes a few additional errors in the ALJ's final decision.

6      1.    <u>Medication Side Effects</u>

7      An ALJ must consider the "side effects of any medication an individual takes

8  or has taken to alleviate pain or other symptom."[65]  Here, the ALJ did not

9  expressly address Plaintiff's testimony or the other evidence in the record

10  indicating that her prescribed medications cause significant dizziness and

11  drowsiness.[66]  Nor did the ALJ make any inquiries regarding these side effects.

12  This, despite Dr. Vincenty's medical opinion that the side effects of Plaintiff's

13  fibromyalgia medication were potentially debilitating.[67]  The Court is therefore left

14  without sufficient information to assess whether the ALJ adequately accounted for

15  the side effects of Plaintiff's medication when crafting the RFC.  For instance, the

16

17

18

19  ───────────────

20  [64] *See Molina*, 674 F.3d at 1115.

21  [65] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

22  [66] *See, e.g.*, AR 73; AR 306; AR 337; AR 481; AR 962; AR 2158.

23  [67] AR 815.

ORDER - 19

1    record is unclear whether Plaintiff could "occasionally climb ladders, ropes or

2    scaffolds" despite the dizziness and drowsiness caused by her medications.[68]

3        2.    Breast Cancer & Treatment

4        In June 2019, Plaintiff was diagnosed with stage-IIB cancer in the left

5    breast.[69]  From July through November 2019, Plaintiff underwent chemotherapy

6    treatment, which carried side effects including fatigue, nausea, decreased appetite,

7    and insomnia.[70]  During that period, Plaintiff was also hospitalized on several

8    occasions for chemotherapy-related issues, including recurrent C. difficile.[71]  Then,

9    in December 2019, Plaintiff underwent a bilateral mastectomy.[72]  And, from

10   December 2019 through July 2020, Plaintiff received maintenance chemotherapy

11   roughly every three weeks.[73]  Additionally, from January 2020 through March

---

[68] *See* AR 2185. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to articulate findings and supporting evidence sufficient to permit meaningful review by the Court).

[69] AR 3017.

[70] *See, e.g.*, AR 3072; AR 3888; AR 4755.

[71] *See, e.g.*, AR 2661; AR 3446; AR 3577.

[72] AR 2458.

[73] *See, e.g.*, AR 2553; AR 2561; AR 3888.

2020, Plaintiff received frequent radiation therapy, which caused her to feel tired, weak, and like she was "getting sick."[74]

The ALJ dismissed the impact of Plaintiff's breast cancer, saying "it was successfully treated with surgery and chemotherapy, and the claimant is now in remission, with no evidence of recurrence or metastasis."[75]  This is true.  However, the ALJ erred by overlooking the evidence of significant symptoms and limitations that Plaintiff's cancer and treatment caused from around June 2019 through at least July 2020.[76]  As Plaintiff says, "The mere fact it eventually went into remission does not alter the impact of cancer in the meantime."[77]

**D.    Remand for Award of Benefits.**

Plaintiff seeks a remand for payment of benefits.  For the reasons discussed below, the Court finds that—based on the record and the ALJ's errors regarding Plaintiff's fibromyalgia symptoms—an immediate award of benefits is warranted.  As such, the Court need not reach Plaintiff's other allegations of error pertaining to her additional mental and physical impairments.

---

[74] *See, e.g.*, AR 2643; AR 3946; AR 4369.

[75] AR 2189.

[76] To qualify as disabling under the Social Security Act, a claimant's limitations must persist, or be expected to persist, for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.909.

[77] ECF No. 15 at 8.

1    When a harmful error occurs in the administrative proceeding, remand for

2  further administrative proceedings is the usual course.[78]    For the Court to remand

3  for award of benefits, three conditions must be satisfied:

4    (1)    the record has been fully developed and further administrative

5         proceedings would serve no useful purpose;

6    (2)    the ALJ failed to provide legally sufficient reasons for rejecting

7         evidence, whether claimant testimony or medical opinion; and

8    (3)    if the improperly discredited evidence were credited as true, the ALJ

9         would be required to find the claimant disabled on remand.[79]

10    Each of these elements are met.  This matter has already been remanded on

11  a prior occasion due to the original ALJ's failure to appropriately consider

12  Plaintiff's fibromyalgia.  The order of remand specifically instructed the ALJ on

13  remand to—among other things—"reassess Plaintiff's residual functional capacity

14  consistent with Social Security Ruling 96-8p" and to "reevaluate Plaintiff's

15  symptoms, consistent with 20 C.F.R. § 404.1529 and Social Security Ruling 16-

16  3p."[80]  "Allowing the Commissioner to decide the issue again would create an

17  unfair 'heads we win; tails, let's play again' system of disability benefits

18

19

20

21  [78] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

22  [79] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

23  [80] AR 2297–98.

adjudication."[81] Therefore, the Court finds it appropriate to credit-as-true Dr. Vincenty's medical opinion and Plaintiff's testimony regarding fibromyalgia. When such evidence is fully credited, the vocational expert's testimony requires a finding that Plaintiff is disabled.  Remand for a payment of benefits is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4.    The decision of the ALJ is **REVERSED,** and this matter is **REMANDED** to the Commissioner of Social Security for immediate calculation and award of benefits.

5.    The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 12th day of July 2023.

_____
EDWARD F. SHEA
Senior United States District Judge

---

[81] *Benecke*, 379 F.3d at 595.

ORDER - 23